UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 07-30721-DHW
                                                   Chapter 13
TAMERA PATTILLO WARREN,

    Debtor.

## MEMORANDUM OPINION

Curtis C. Reding, the chapter 13 trustee, filed an objection to confirmation of the debtor's plan. At issue is whether the debtor's plan satisfies the requirements of 11 U.S.C. § 1325(b)(1) – the "projected disposable income test." Upon consideration of the undisputed facts and the respective briefs of law filed by the parties, the court concludes that the trustee's objection to confirmation of the plan should be overruled.

### Jurisdiction

The court's jurisdiction in this matter is derived from 28 U.S.C. § 1334 and from the order of the United States District Court for this district referring title 11 matters to the Bankruptcy Court. Further, because the dispute in this case is one concerning the confirmation of a plan, this is a core proceeding under 28 U.S.C. § 157 thereby extending this court's jurisdiction to the entry of a final order or judgment.

### Facts

The parties agree that the relevant facts are undisputed and have filed a joint stipulation of those facts (Doc. # 25). The court adopts the stipulated facts as the facts in this case and summarizes them as follows.

The debtor filed this chapter 13 case on May 21, 2007. During the six-month period preceding the filing of the case, she received income from three sources. Ms. Warren earned income through her employer, the State of Alabama, totaling $5,514 per month. In addition, she received $800 each month through her deceased father's estate. Finally, the debtor earned $350 per month for her services as treasurer of the State Employees Grill. Therefore, Ms.

Warren's average monthly income for the six-month period preceding the bankruptcy filing was $6,664.[1] At that level, her income is above the median income for a similarly-sized household in Alabama.

However, Ms. Warren's term as treasurer of the State Employees Grill ended in May 2007, and as a result, she no longer receives that income ($350 per month). Further, the $800 per month that the debtor receives through her father's decedent estate will be exhausted in August 2008.

Chapter 13 debtors are required to report their disposable income, which they calculate through the completion of Form 22C (Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income). Ms. Warren's Form 22C reflects that her disposable income is $354.45 per month. In arriving at that amount, she properly included the $350 per month that she no longer receives from her job as treasurer. However, she also deducted the same amount as an expense, effectively omitting the income from the form's calculation. *See* Form 22C, Line 59. Her plan devotes $354.45 per month for payment to unsecured creditors. However, it is not sufficient to pay unsecured claims in full. If the $350 were included in the form's calculation, the debtor's disposable income would total $704.45. This would produce a "payment over time" roughly twice that provided by the debtor's current plan.

## Conclusions of Law

The issue is whether a debtor's "projected disposable income" should be determined solely by a Form 22C calculation irrespective of the debtor's loss of a particular source of income included in the calculation. For the following reasons the court concludes that the Form 22C calculation creates a presumptive starting point for determining "projected disposable income" that may be rebutted by evidence of the debtor's loss of a source of income included in that calculation.

11 U.S.C. § 1325(b)(1)(B) provides that a composition plan cannot be

---

[1] The debtor's husband has no income. He has applied for disability but is not expected to receive any money until the end of 2008.

confirmed over the objection of the trustee or an unsecured creditor unless the plan provides for the payment of all projected disposable income to unsecured creditors for the applicable commitment period.[2]

The term "disposable income" is defined by the Code. Under that definition, disposable income is calculated by subtracting amounts reasonably necessary for the debtor's maintenance and support, business operation, or charitable contributions (within a prescribed amount) from the debtor's "current monthly income."[3]

---

[2] The exact text of the statute provides:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1).

[3] The Code provides:

(b)(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
    (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
    (ii) for charitable contributions (that meet the definition of 'charitable contribution' under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4) in an amount not to exceed 15 percent of gross income

-3-

Similarly, the term "current monthly income" is statutorily defined. Generally, current monthly income is arrived at by averaging the debtor's income during the six months preceding bankruptcy.[4]

As stated, the trustee contends that the debtor is required to pay disposable income as calculated on Form 22C. Form 22C takes into account

---

      of the debtor for the year in which the contributions are made; and
(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2).

[4] Some sources of income are excluded. Section 101(10A) states that 'current monthly income'

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—
  (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
  (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

11 U.S.C. § 101(10A).

Case 07-30721    Doc 28    Filed 09/07/07    Entered 09/07/07 10:49:18    Desc Main
Document      Page 4 of 6

only the debtor's income earned within the six months prior to bankruptcy. Therefore, Ms. Warren's earnings as treasurer, which she no longer has, are included in that calculation. The trustee maintains that a debtor's disposable income as calculated on Form 22C fixes the debtor's obligation during the life of the plan regardless of a change in circumstances. This court disagrees, finding the reasoning expressed in *In re Arsenault*, 2007 WL 1956277 (Bankr. M.D. Fla. July 3, 2007) persuasive.

The *Arsenault* court notes that courts are split into two camps concerning this issue:

> One line of cases, typified by *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006), holds that disposable income means current monthly income as defined in section 101(10A) and that disposable income is the same as projected disposable income. The determination of a debtor's projected disposable income is, therefore, basically a mechanical test using historic income data. . . .
>
> The second line of cases, typified by *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006), stands for the proposition that the word "projected," to be given meaning, must modify disposable income such that the term "disposable income" in section 1325(b)(2) is not the same as the term "projected disposable income" in section 1325(b)(1)(B). Projected disposable income, therefore, "must be based upon the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income." *Id.* at 722.

*Arsenault*, 2007 WL 1956277, at *3. The *Arsenault* court found the *Hardacre* line of cases better reasoned for a number of reasons. The court examined, *inter alia*, tenets of statutory construction to conclude that the word "projected" modifies "disposable income" to give the phrase "projected disposable income" a forward-looking flavor, not merely a snapshot using historical data. It concluded that a court should consider not only the debtor's historical finances but also the debtor's expectations for the term of the plan. Further, the *Arsenault* court noted that the use of the phrase "to be received" in § 1325(b)(1)(B) is an additional indication that projected disposable income is

-5-

forward looking over the plan's term. *Id.* at *4. The *Arsenault* court also noted that a "rigid adherence to a debtor's pre-petition income history would produce results at odds with both Congressional intent and common sense. For, example, if a debtor's pre-petition income is higher than his or her post-petition income, the debtor may be forced into a plan doomed to fail." *Id.* at *5. This last point is exactly the situation in the case *sub judice* where the trustee insists on the debtor's making plan payments beyond her means based upon income that she no longer has.

This court holds that the Form 22C determination of disposable income creates a presumption that the debtor must pay that amount to unsecured creditors over the term of the plan. That presumption may, however, be rebutted with evidence that the debtor's expectancy of the future alters that result.

## Conclusion

The court concludes that the debtor has rebutted the presumption in this case. Accordingly and by separate orders, the trustee's objection to confirmation of the debtor's plan will be overruled, and the plan will be confirmed.

Done this the 6th day of September, 2007.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: T. David Weston, Debtor's Attorney
   Sabrina L. McKinney, Trustee's Attorney
   Curtis C. Reding, Trustee